# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| DOUGLAS J. COPPESS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:10-cv-00109 Judge Todd J. Campbell Magistrate Judge John Bryant |
| vs. | ) ) ) | |
| HEALTHWAYS, INC; BEN R. LEEDLE, JR., THOMAS G. CIGARRAN, JOHN A. WICKENS HENRY D. HERR, WARREN NEEL, WILLIAM C. O'NEIL, JR., JAY C. BISGARD, JOHN W. BALLATINE, MARY JANE ENGLAND, ALISON TAUNTON-RIGBY, L. BEN LYTLE, MARY A. CHAPUT, ALFRED LUMSDAINE, BETTY ANN LAY, AMY MOORE, KEITH BRALY, GLENN HARGREAVES, HANS BERTIL WESTIN, CLAIBRONE RICHARDS, JERRY ARMSTRONG, and JOHN DOE 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## STIPULATION OF SETTLEMENT

Counsel for Douglas J. Coppess ("Plaintiff") and counsel for Defendants Healthways,

Inc. ("Healthways"), Ben R. Leedle, Jr., Thomas G. Cigarran, John A. Wickens, Henry D. Herr,

Warren Neel, William C. O'Neil, Jr., Jay C. Bisgard, John W. Ballantine, Mary Jane England,

Alison Taunton-Rigby, L. Ben Lytle, Mary A. Chaput, Alfred Lumsdaine, Betty Ann Lay, Amy

Moore, Keith Braly, Glenn Hargreaves, Hans Bertil Westin, Claiborne Richards, and Jerry

Armstrong ("Defendants"), ("Plaintiff" and "Defendants" collectively are the "Parties"), enter

into this Stipulation of Settlement (the "Agreement" or the "Stipulation"), with the approval and

authority of their respective clients, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

# RECITALS

A.        On February 1, 2010, Plaintiff filed a class action complaint (the "Complaint") in the United States District Court for the Middle District of Tennessee, Nashville Division (the "Court") bearing the caption *Douglas J. Coppess, Individually and on Behalf of All Others Similarly Situated vs. Healthways, Inc., Ben R. Leedle, Jr., Thomas G. Cigarran, John A. Wickens, Henry D. Herr, Warren Neel, William C. O'Neil, Jr., Jay C. Bisgard, John W. Ballantine, Mary Jane England, Alison Taunton-Rigby, L. Ben Lytle, Mary A. Chaput, Alfred Lumsdaine, Betty Ann Lay, Amy Moore, Keith Braly, Glenn Hargreaves, Hans Bertil Westin, Claiborne Richards, and Jerry Armstrong, and John Doe 1-10*, and assigned by the Clerk of Court the Civil Action Number 3:10-cv-00109 (the "Action").

B.        In the Complaint, Plaintiff alleges a number of causes of action brought pursuant to § 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132, against Defendants. Plaintiff alleges that Defendants were fiduciaries of the Healthways Inc. Retirement Savings Plan ("the Plan") and that they breached fiduciary duties owed to the Plan's participants, including Plaintiff, by, among other things, continuing to permit investment by the Plan's participants in Healthways stock and failing to take appropriate ameliorative action when such investments allegedly became imprudent. Plaintiff also alleges that Defendants breached their fiduciary duties under ERISA by failing to ensure that the Investment Committee (the "Committee") members had access to all relevant information regarding investment in Healthways stock as well as failing to monitor the Committee. The Complaint seeks equitable and compensatory relief pursuant to ERISA §§ 409 and 502(a)(2), specifically the restoration by Defendants to the Plan of losses allegedly caused by Defendants' alleged breaches of fiduciary duties. The Complaint also seeks costs and attorney's fees pursuant to ERISA § 502(g) and the common fund doctrine.

C.     This Action is the second iteration of litigation against Healthways, Inc.  Former plaintiff Kenneth Banks ("Banks") filed a class action complaint on July 31, 2008 against Healthways, Inc. and certain of its directors and officers alleging breaches of fiduciary duties to participants in the Company's 401(k) plan.  *Kenneth Banks v. Healthways Inc., et al.*, Case No. 08-cv-00734 (M.D. Tenn., Campbell, J.) (hereinafter the "*Banks* litigation").  Banks filed an Amended Complaint on September 29, 2008.  (*Banks* Doc. 17.)  Defendants moved to dismiss the Amended Complaint on October 29, 2008 for failure to state a claim.  (*Banks* Doc. 22.) This Court partially granted and partially denied Defendants' Motion to Dismiss on January 28, 2009. (*Banks* Doc. 37.)  After a brief period of discovery, the *Banks* litigation was dismissed with prejudice on behalf of Banks, but without prejudice on behalf of the putative class.  (*Banks* Doc. 53, 54.)  Save for the change in the named plaintiff, the *Coppess* Complaint in this Action is identical to the *Banks* litigation amended complaint, including all allegations and requests for relief.  (*Cf.* Doc. 1 *with Banks* Doc. 17.)

D.     Plaintiff brings this action on behalf of a proposed class consisting of:

> All persons (other than Defendants) who were participants in or beneficiaries of the Plan at any time between May 16, 2005 and the present, and whose accounts included investments in Healthways stock.  (Compl. ¶ 185.)

The terms "Settlement Class" or "Members of the Settlement Class" as used in this Agreement shall include all persons within the class defined above who held such stock in their Plan accounts at any time during the period of May 16, 2005 through July 30, 2010, (the "Class Period") excluding any and all Defendants, Banks and any legal representatives, heirs, predecessors, and assigns of Defendants and/or Banks.

E.     On March 11, 2010, the Court entered by Consent Order in this Action the Order granting in part and denying in part the Defendants' Motion to Dismiss previously entered in the

*Banks* litigation (*Banks* Doc. 37). (Doc. 15.) Defendants filed their Answer to the Coppess Complaint on March 22, 2010. (Doc. 20.)

F. On June 23, 2010, the Parties, by and through their respective counsel, reached an oral agreement in principle to the terms of the proposed settlement (the "Settlement").

G. Defendants vigorously deny each and every allegation of wrongdoing made in the Complaint and contend that they have no liability in the Action. Defendants specifically deny the allegations that the actions complained of were within the scope of any fiduciary duties owed to the Plan's participants, or that Defendants breached any fiduciary duties or any other provisions of ERISA in connection with the investment, acquisition, or retention of Healthways stock by the Plan during the Class Period, or at any time, and further deny that they in any way failed to adequately monitor or inform either the Plan's participants or the Committee or failed to act loyally to the Plan's participants. Defendants further contend that they acted prudently in all respects.

H. Plaintiff's counsel have conducted an investigation into the facts, circumstances, and legal issues associated with the Action. This investigation has included: (i) inspecting, reviewing, and analyzing documents produced by or otherwise relating to Healthways, the MHS pilot programs, Healthways stock, and the Plan, including documents produced by Defendants during the Action and numerous public documents, including, but not limited to, press releases and regulatory filings; (ii) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iii) inspecting, reviewing, and analyzing numerous documents concerning the Plan and the administration of the Plan, particularly as such documents pertain to the investment by the Plan in Healthways stock; (iv) deposing a Rule

30(b)(6) deponent regarding the Plan; and (v) attending and/or reviewing the depositions of numerous witnesses taken simultaneously both in this Action and in a related securities action.

I. Defendants' counsel also have conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Complaint, and the operation and administration of the Plan. Defendants' counsel have taken Plaintiff's deposition, reviewed numerous documents, attended the depositions of numerous witnesses taken simultaneously both in this Action and in a related securities action, and made a thorough study of the legal principles applicable to Plaintiff's actual and potential claims in the Action.

J. Based on their investigation of the merits of this Action, the litigation of this Action, and their knowledge and experience pursuing such actions generally, Plaintiff's counsel believe that the Settlement will provide substantial benefits to the Settlement Class. When the benefits conferred by the Settlement are weighed against the attendant risks of continuing the prosecution of the Action, Plaintiff's counsel believe that the Settlement represents a reasonable and fair resolution of the claims of the Settlement Class. In reaching such conclusion, Plaintiff's counsel have considered, among other things, the risks of litigation (including the risks of establishing both liability and loss to the Plan), the time necessary to achieve a final resolution through litigation and any appeals, the complexity of the claims set forth in the Complaint, the ability of Defendants to withstand judgment, the existence of insurance coverage, and the benefits accruing to the Plan's participants under the Settlement.

K. Although Defendants continue to deny all liability with respect to any and all of the claims alleged in the Complaint, Defendants nevertheless consider it desirable that any and all possible controversies and disputes arising out of or during the Class Period that relate to the matters, transactions, and occurrences referenced in the Complaint and/or related to the Plan and

the investment options in the Plan, including, without limitation, the Healthways stock held by the Plan, be conclusively settled and terminated on the terms and conditions set forth below. The settlement of the Action and the attendant final dismissal of the Complaint will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring Plaintiff's claims and potential claims to an end.

L.     The Parties have reached this Settlement, by and through their respective undersigned counsel, on the terms and conditions set forth in this Agreement.

M.     Defendants, by entering into this Agreement, do not admit to the truth of any allegation contained in the Action or to any fault, liability, or wrongdoing whatsoever.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by the Parties, in consideration of the promises, covenants and agreements herein described, and the Parties, intending to be legally bound, do hereby mutually agree as follows, subject to the approval of the Court:

### Stipulation to Class Certification of the Settlement Class

1.     The Parties stipulate and agree that for settlement purposes only this Action shall proceed as a non-opt out class action pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), and (b)(1), with Plaintiff's counsel Gainey & McKenna as lead class counsel ("Class Counsel"), and with a Settlement Class as defined in Paragraph D of this Agreement.

### Preliminary Approval

2.     As soon as practicable following the execution of this Agreement by the Parties, but in no event later than August 16, 2010, Plaintiff shall file a Motion for Preliminary Approval with the Court, seeking entry of an order substantially in the form attached hereto as Exhibit 1 (the "Preliminary Approval Order"), including class notice substantially in the form attached hereto as Exhibit 2 (the "Class Notice"). Plaintiff shall request that a final fairness hearing be

held at least ninety (90) days from the date of mailing of the Class Notice, for the Court to consider whether the terms of this Settlement are fair, reasonable and adequate and thus should be finally approved and implemented by the Court pursuant to Federal Rule of Civil Procedure 23(e). Defendants shall in good faith support the motion for preliminary approval and will not oppose the motion, provided it is consistent with the terms and conditions of the Settlement. Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendants shall cause to be prepared and provided the notices required by CAFA, as specified by 28 U.S.C. § 1715, within ten (10) calendar days of filing the Motion for Preliminary Approval of Settlement. Class Counsel will be copied on any and all notices provided by Defendants pursuant to this Paragraph.

3.      If the Settlement (including any modification thereto made with the consent of the Parties as provided for herein) is approved preliminarily by the Court, the Parties shall cause the Class Notice to be disseminated in the manner and on the date set in the Preliminary Approval Order to Members of the Settlement Class at the addresses maintained by the Plan's record-keeper for such individuals, to be published on the website identified in the Class Notice, and to be emailed to Class Members for whom email addresses are readily available. Costs associated with the Class Notice shall be paid out of the Settlement Amount.

<u>**Final Approval**</u>

4.      If the Settlement (including any modification thereto made with the consent of the Parties as provided for herein) is preliminarily approved by the Court, the Parties shall promptly move the Court to enter an Order and Final Judgment substantially in the form attached hereto as Exhibit 3 (the "Final Approval Order"), which among other things:

(a)      Approves the Settlement, adjudges the terms thereof to be fair, reasonable, adequate and in the best interests of the Settlement Class, and directs consummation of the Settlement in accordance with the terms and conditions of the Stipulation;

LEGAL02/31989737v5

(b)    Certifies the Settlement Class as a non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

(c)    Determines that the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to the Settlement Class;

(d)    Approves a Plan of Allocation consistent with Paragraph 22 of this Agreement;

(e)    Determines what legal fees and expenses should be awarded or reserved for award to Class Counsel out of the Settlement Amount as contemplated by Paragraphs 18 through 21 of this Agreement and determines whether to award a case contribution award for Named Plaintiff Douglas J. Coppess;

(f)    Dismisses the Action with prejudice as to Defendants and operates to extinguish, discharge and release any and all "Released Claims" against the "Releasees" (as defined in Paragraph 6 of this Agreement), without costs except as herein provided, said dismissal subject only to compliance by the Parties with the terms of this Agreement and any order of the Court concerning this Agreement;

(g)    Bars and enjoins members of the Settlement Class and the Plan from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any and all Releasees; and

(h)    Permanently enjoins the Plaintiff, Members of the Settlement Class, and the Plan from asserting, commencing, prosecuting or continuing, either directly, individually, representatively, derivatively or in any other capacity, any other actions in

8

any court asserting such Released Claims or from receiving any additional recovery or relief from any Releasees with respect thereto.

## Date of Complete Settlement Approval

5.      For purposes of this Agreement, "Complete Settlement Approval" shall occur when all of the following have taken place: (a) entry of the Final Approval Order approving the Settlement; and (b) the expiration of all applicable appeal periods for the appeal of the Final Approval Order without any appeal having been filed or, if an appeal is taken, upon entry of an order affirming the Final Approval Order and the expiration of any applicable period for the reconsideration, rehearing or appeal of such affirmance without any motion for reconsideration or rehearing or further appeal having been filed.  Upon Complete Settlement Approval, the Settlement shall become "Final."  The pendency of unresolved issues regarding the Plan of Allocation, attorney's fees/expenses, and/or case contribution award shall not affect the finality of the Settlement.

## Release

6.      Upon Complete Settlement Approval, Plaintiff, Members of the Settlement Class, and the Plan (subject to review and approval by an independent fiduciary) shall release any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorney's fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief) for losses suffered by the Plan, Plan participants, or beneficiaries ("Released Claims") (i) against the Defendants Healthways, Inc. ("Healthways"), Ben R. Leedle, Jr., Thomas G. Cigarran, John A. Wickens, Henry D. Herr, Warren Neel, William C. O'Neil, Jr., Jay C. Bisgard, John W. Ballantine, Mary Jane England, Alison Taunton-Rigby, L. Ben Lytle, Mary A. Chaput, Alfred Lumsdaine, Betty Ann Lay, Amy Moore, Keith Braly, Glenn Hargreaves, Hans Bertil Westin,

LEGAL02/31989737v5

Claiborne Richards, Jerry Armstrong, and the current or former officers, directors, employees, insurers and their re-insurers, attorneys, affiliates, subsidiaries, predecessors, successors, corporate parent, committees, managers, fiduciaries, or agents of any Defendant, including, without limitation, current or former members of Healthways' board of directors, current or former members of the Investment Committee for the Healthways Inc. Retirement Savings Plan, and any fiduciary of the Plan (collectively the "Releasees"), whether accrued or not, whether already acquired or acquired in the future, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim or otherwise, arising out of any or all of the acts, omissions, facts, matters, transactions or occurrences that are, were or could have been alleged, asserted, or set forth in the Complaint, so long as they are related in any way to any of the allegations or claims asserted in the Complaint, or would be barred by principles of *res judicata* had the claims asserted in the Complaint been fully litigated and resulted in a final judgment or order, including but not limited to claims that Defendants and/or any fiduciaries of the Plan breached ERISA fiduciary duties during the Class Period in connection with (a) the acquisition and holding of Healthways stock by the Plan or the Plan's participants, (b) the appointment and/or monitoring of the Plan's fiduciaries with regard to Healthways or Healthways stock, (c) the provision of information to the Plan's fiduciaries or participants and beneficiaries of the Plan regarding Healthways or Healthways stock, or (d) the loyalty of the Plan's fiduciaries regarding Healthways or Healthways stock; and (ii) against any applicable director and officer or fiduciary liability insurance policy, including the Travelers Fiduciary Liability Policy No. EC06800753, the AXIS 1st Excess Policy No. RAN712058/01/2007, and the ACE 2nd Excess Policy No. DOX G21647251 002, or any other

LEGAL02/31989737v5

applicable policy, with respect to coverage for the Released Claims under clause (i) of this Paragraph 6.

7.      Upon Complete Settlement Approval, Plaintiff, Members of the Settlement Class, and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by (a) § 1542 of the California Civil Code, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," and (b) any similar state, federal, or other law, rule or regulation or principle of common law of any domestic or foreign governmental entity.  Plaintiff, Members of the Settlement Class, and the Plan may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims with respect to any Releasees, but Plaintiff, Members of the Settlement Class, and the Plan hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, without regard to the subsequent discovery or existence of such other or different facts.

8.      Upon Complete Settlement Approval, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiff, the Settlement Class and Plaintiff's counsel (collectively, the "Plaintiff Released Parties") from any and all Claims relating to the institution or prosecution of the Action or the settlement of any Released Claims, except that the release shall not include claims relating to the covenants or obligations set forth in this Settlement Agreement.  The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could have been asserted by Plaintiff, the Settlement Class, the Plan

LEGAL02/31989737v5

and Class Counsel against the Releasees with respect to the Released Claims. Accordingly, Plaintiff and Defendants agree not to assert in any forum that the claims asserted in the Action were brought or defended in bad faith or without a reasonable basis. The Parties shall not assert any contention regarding a violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action and agree that, except as expressly set forth herein, each party shall bear his, her or its own costs and expenses, including attorney's fees.

9. Notwithstanding any other provision of this Stipulation of Settlement, Plaintiff and Members of the Settlement Class shall not be deemed to have waived or released any claim by any individual Plan participant concerning his or her eligibility for benefits under the Plan or to contest the correct amount of such benefit except to the extent that such claim may relate to the claims asserted in the Complaint.

**Payment of Settlement Amount**

10. Plaintiff, on behalf of the Settlement Class and the Plan, agrees to settle and resolve fully the claims asserted in the Action against the Releasees, including but not limited to the Released Claims, for *One Million Two Hundred Fifty Thousand U.S. Dollars and no cents* ($1,250,000.00) (the "Settlement Amount"). Defendants shall cause the Settlement Amount to be paid consistent with the terms of this Settlement. Except as otherwise provided herein, under no circumstances shall Defendants be required to pay, or cause to be paid, more than the Settlement Amount and upon payment of the Settlement Amount all Defendants' payment obligations under this Agreement shall be satisfied and discharged in full.

11. The Settlement Amount will be funded by insurance proceeds and for purposes of this Agreement, any such amount shall be considered to have been paid by Defendants. All such proceeds shall be deposited into the Escrow Account (as defined in paragraph 12) to be held by

LEGAL02/31989737v5

the Escrow Agent.  The "Settlement Fund" is the Settlement Amount deposited into the Escrow Account.

12.     Defendants shall cause the full Settlement Amount to be deposited, not later than thirty (30) calendar days following the Court's entry of the Preliminary Approval Order, into an interest-bearing escrow account (the "Escrow Account") at a financial institution (the "Escrow Agent") identified by Class Counsel and consented to by Defendants.  No later than fifteen (15) calendar days following the Court's entry of the Preliminary Approval Order, Class Counsel shall provide Defendants with the name of the Escrow Agent, the payee name and address, the federal tax identification number, and any other information needed for Defendant to deposit the Settlement Amount into the Escrow Account.  All Court-approved attorney's fees and expenses shall be paid by the Escrow Agent out of the Escrow Account.

13.     The Settlement Fund shall bear interest and shall be invested only in United States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury, repurchase agreements collateralized by such securities, and mutual funds or money market accounts that invest exclusively in the foregoing securities.  The Settlement Fund shall be structured and managed to qualify as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder and shall make tax filings and provide reports to Class Counsel for tax purposes.  The Parties shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Settlement Fund will pay any federal, state, and local taxes that may apply to the income of the Settlement Fund.  The Escrow Agent or Settlement Administrator shall arrange for the preparation and filing of all tax reports, forms, and returns required to be filed, prepared or disseminated by the Settlement Fund and for the payment from the Settlement Fund of any taxes

owed, and will send Class Counsel copies of all such filings and receipts of payment in a timely manner. The Escrow Agent or Settlement Administrator shall be authorized to retain a certified public accounting firm for those purposes, subject to Class Counsel's approval. All taxes on the income of the Settlement Fund and tax-related expenses incurred in connection with the taxation of the Settlement Fund shall be paid solely out of the Settlement Fund, shall be considered a cost of administration of the Settlement, and shall be timely paid without further order of the Court. All fees and expenses of the Escrow Agent, and of professional advisors engaged by the Escrow Agent in connection with the Settlement Fund, shall be funded solely from the Settlement Fund, subject to Class Counsel's approval. Defendants will take no position, directly or indirectly, with respect to such matters, and will bear no liability regarding the fees/expenses of the Escrow Agent, the Settlement Administrator, or other professionals hired by either.

14. Although Defendants deny any fault, liability or wrongdoing, the Parties agree that the payment of the Settlement Amount is intended as settlement of alleged breach of fiduciary duty claims under ERISA for allegedly lost earnings on the Plan's assets allegedly caused by investment in Healthways stock, and shall be treated as earnings for all purposes under the Plan. None of the Settlement Amount represents punitive damages or, to the Parties' knowledge, taxable compensation to any individual Class Member.

## Payment of Settlement Administrative Expenses

15. Expenses for allocation to Members of the Settlement Class and administration of the Settlement by the Settlement Administrator will be paid from the Settlement Fund.

## Payment of Expenses of Class Notice

16. Expenses incurred in providing the Class Notice required by the Court in the Preliminary Approval Order shall be paid from the Settlement Fund.

## Payment of Fees and Expenses of the Independent Fiduciary

LEGAL02/31989737v5

17.     Defendants shall pay all fees and expenses incurred by the Independent Fiduciary in the course of evaluating the Settlement (as described in Paragraph 24(b) of this Agreement), including fees and expenses incurred by attorneys, consultants, and advisers retained or employed by the Independent Fiduciary.

## Payment of Attorney's Fees and Expenses

18.     Class Counsel's attorney's fees, costs, and expenses will be subject to the Court's approval and shall be paid out of the Escrow Account by the Escrow Agent as specified in Paragraph 12 of this Agreement.   Defendants shall take no position directly or indirectly on Class Counsel's application for attorney's fees, costs, and expenses, provided that Class Counsel do not request an award of attorney's fees higher than 33 1/3 % of the Settlement Amount, and Defendants shall leave the amount to the sound discretion of the Court.

19.     The Court's consideration of requests for Class Counsel's fees and expenses and a case contribution award for the Named Plaintiff are matters separate and apart from the Settlement between the Parties, and the Court's decision concerning the attorney's fees and costs of Class Counsel and the Named Plaintiff's case contribution award (if any) shall not affect the validity of the Agreement or finality of the Settlement in any manner.

20.     Class Counsel shall be solely responsible for allocating the Class Counsel's fees and expenses among Plaintiff's counsel.  Any award of attorney's fees shall be allocated among Plaintiff's counsel in a fashion which, in the opinion of Class Counsel, fairly compensates Plaintiff's counsel for their respective contributions in the prosecution of the Action.  Defendants shall bear no responsibility for this allocation or be subject to any claims or suit under this Agreement for the same.

21.     On or before twenty-one (21) days prior to the final fairness hearing, Class Counsel will apply to the Court for a collective award of attorney's fees and reimbursement of

litigation expenses and for a case contribution award, not to exceed $10,000, for the Named Plaintiff. Upon Complete Settlement Approval and following entry by the Court of the Final Approval Order approving the payment of attorney's fees and expenses from the Settlement Fund, Class Counsel may instruct the Escrow Agent in writing to disburse such payments immediately from the Settlement Fund in accordance with the Court's Final Approval Order. Payment of a case contribution award to Named Plaintiff of not more than $10,000, if approved by the Court and awarded in the Final Approval Order, shall be payable immediately upon Complete Settlement Approval. Defendants shall have no obligations whatsoever with respect to any attorney's fees or expenses incurred by Plaintiff's counsel, which shall be payable solely from the Settlement Fund, or for any case contribution award, which also shall be payable solely from the Settlement Fund.

## Plan of Allocation

22. The Plan of Allocation shall be prepared by counsel for the Parties and submitted to the Court for approval in connection with final approval of the Settlement. The Court's approval of the Plan of Allocation is not a material or integral part of or condition to the Settlement, and the Court's rejection or modification of the Plan of Allocation shall neither entitle Plaintiff or Defendants to withdraw from or terminate the Settlement, nor affect the finality of the Settlement or Final Approval thereof.

## Right to Withdraw from the Settlement

23. Each of the Parties shall have the option to withdraw unilaterally from and terminate the Settlement in the event that: (a) either the Preliminary Approval Order or the Final Approval Order referred to above is not entered substantially in the forms specified herein, including such modifications thereto as may be ordered by the Court with the consent of the

16

Parties; or (b) the Settlement is not approved by the Court or is disapproved or materially modified upon appeal.

24. Defendants shall have the right to withdraw from this Settlement and terminate the Agreement if:

(a) before the issuance of the Final Approval Order by the Court, the United States Department of Labor files any objection to the Agreement or Settlement in any court, brings a claim against any Releasees relating to the Released Claims, or notifies any Releasee that it intends to file such a Claim; or

(b) any Independent Fiduciary retained by the Defendants evaluates but fails to approve the Settlement on or before fourteen (14) calendar days prior to the Court's final fairness hearing. The Settlement is contingent upon the Independent Fiduciary's: (i) approving the Settlement and giving a release in its capacity as a fiduciary of the Plan and for and on behalf of the Plan coextensive with the release from the Plaintiff and the Members of the Settlement Class, (ii) authorizing the Settlement in accordance with Prohibited Transaction Class Exemption 2003-39, and (iii) finding that the Settlement does not constitute a prohibited transaction under ERISA § 406(a). The Defendants shall cause the Plan's current fiduciary to move promptly to seek to obtain this authorization or finding. All Parties shall cooperate in providing information to the Independent Fiduciary upon request.

25. In the event that the Settlement is terminated pursuant to Paragraphs 23 or 24 of this Agreement, then: (a) the Settlement proposed herein shall be of no further force and effect; (b) the agreements and stipulations in this Agreement concerning class definition or class certification will not be used as evidence or argument to support class certification or class

LEGAL02/31989737v5

definition, and Defendants will retain all rights to oppose class certification; and (c) this Agreement and all negotiations, proceedings and statements relating thereto, and any amendment thereof, shall be null and void, shall not be submitted or admitted in the Action or any other proceeding, and shall be without prejudice to any party hereto, and each party shall be restored to his, her or its respective position as it existed prior to the execution of this Stipulation.

## Severability

26.     The provisions of this Agreement are not severable.

## Authority

27.     Each of the attorneys executing the Agreement on behalf of one or more of the Parties hereto warrants and represents that he or she has been duly authorized and empowered to execute this Stipulation on behalf of his or her respective client or clients.

## Stipulation of Settlement Not an Admission

28.     The provisions contained in this Agreement and all negotiations, statements and proceedings in connection therewith shall not be deemed a presumption, a concession or an admission by Defendants of any fault, liability or wrongdoing as to any fact or claim alleged or asserted in the Action or any other actions or proceedings and shall not be interpreted, construed, deemed, invoked, offered or received in evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal or administrative, except in a proceeding to enforce the terms or conditions of this Stipulation.  Defendants have denied and continue to deny each and every claim alleged in the Action.  Accordingly, neither this Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or invalidity of any Released Claim, or of any

LEGAL02/31989737v5

wrongdoing or liability or lack thereof of any Releasee; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission or lack thereof of any Releasee in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The Releasees may file the Agreement and/or the Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, claim or issue preclusion, release, good-faith settlement, judgment bar or reduction or any other similar defense or counterclaim. The Parties and their counsel, and each of them, agree, to the extent permitted by law, that all agreements made relating to the confidentiality of information shall survive and be unaffected by this Agreement.

## Counterparts

29.     This Stipulation may be executed in any number of actual or telecopied counterparts and by each of the different parties thereto on several counterparts, each of which when so executed and delivered shall be an original. The executed signature page(s) from each actual or telecopied counterpart may be joined together and attached to one such original and shall constitute one and the same instrument.

## Waiver

30.     The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

## Arm's-Length Negotiations

31.     The Parties represent and warrant that they are voluntarily entering into this Agreement as a result of arm's-length negotiations among their counsel, that in executing this

LEGAL02/31989737v5

Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel. Each Party assumes the risk of mistake as to facts or law. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

## Entire Agreement; Amendments

32.     This Agreement and the attached Exhibits, incorporated herein by reference, constitute the entire agreement of the Parties with respect to the subject matter hereof, and may not be amended, or any of their provisions waived, except by a writing executed by all Parties hereto. The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation. The Parties intend this Agreement to be a final and complete resolution of all disputes between them, relating to or arising out of, the subject matter of the Action, or which otherwise constitute Released Claims. Accordingly, the Parties agree that the terms of the Agreement represent a good-faith settlement of the claims, reached voluntarily after consultation with experienced counsel.

## Successors and Assigns

33.     This Agreement, upon becoming operative, shall be binding upon and inure to the benefit of the Parties hereto, Releasees, and Plaintiff Released Parties and their respective successors, assigns, heirs, estates, executors and administrators and upon any corporation, partnership or entity into or with which any such person or entity may merge or consolidate.

## Governing Law

34. This Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Tennessee law will apply without regard to conflict of law principles.

**Best Efforts**

35. The Parties hereto and their attorneys agree to cooperate fully with one another in seeking the Court's approval of this Agreement and the Settlement and to use their best efforts to effect the confirmation of this Agreement and the Settlement.

This 30th day of July, 2010.

| | |
|---|---|
| *Thomas J. M⁻Kenna* | |
| GAINEY & McKENNA | ALSTON + BIRD LLP |
| Thomas J. McKenna | H. Douglas Hinson |
| 295 Madison Ave., 4th Floor | 1201 W Peachtree Street |
| New York, NY 10017 | Atlanta, GA 30309-3424 |
| (212) 983-1300 Telephone | Phone: (404) 881-7000 |
| (212) 983-0383 Facsimile | Fax: (404) 881-7777 |
| tjmckenna@gaineyandmckenna.com | doug.hinson@alston.com |
| | |
| BRAMLETT LAW OFFICES | BASS, BERRY & SIMS, PLC |
| Paul Kent Bramlett | Wallace W. Dietz (TN #9949) |
| Robert Preston Bramlett | Brian D. Roark (TN #20262) |
| 2400 Crestmoor Road | 150 Third Avenue South, Suite 2800 |
| P.O. Box 150734 | Nashville, TN 37201 |
| Nashville, TN 37215 | Phone: (615) 742-6200 |
| pknashlaw@aol.com | broark@bassberry.com |
| Robert@BramlettLawOffices.com | wdietz@bassberry.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |