**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| DOUGLAS J. COPPESS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:10-cv-00109 Judge Todd J. Campbell Magistrate Judge John Bryant |
| vs. | ) ) | |
| HEALTHWAYS, INC; BEN R. LEEDLE, JR., THOMAS G. CIGARRAN, JOHN A. WICKENS HENRY D. HERR, WARREN NEEL, WILLIAM C. O'NEIL, JR., JAY C. BISGARD, JOHN W. BALLATINE, MARY JANE ENGLAND, ALISON TAUNTON-RIGBY, L. BEN LYTLE, MARY A. CHAPUT, ALFRED LUMSDAINE, BETTY ANN LAY, AMY MOORE, KEITH BRALY, GLENN HARGREAVES, HANS BERTIL WESTIN, CLAIBRONE RICHARDS, JERRY ARMSTRONG, and JOHN DOE 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
CERTIFY CLASS FOR SETTLEMENT PURPOSES AND FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

# Table of Contents

I.      INTRODUCTION ..................................................................................1

II.      HISTORY AND BACKGROUND OF THE LITIGATION
AND THE SETTLEMENT ...................................................................2

     A.      Factual Basis For Lawsuit ........................................................2

     B.      Progress Of The Litigation And Settlement Negotiations...........................3

     C.      The Parties Draft A Stipulation Of Settlement ...........................................7

     D.      The Plan Of Allocation .............................................................7

         1.      A Class Member's Net Loss is Calculated ...................................8

         2.      A Class Member's Net Loss Percentage is Calculated .................8

         3.      A Class Member's Share of the Net Settlement Amount is Calculated .........8

     E.      The Settlement Has Been Evaluated
By An Independent Fiduciary........................................................8

     F.      The Court-Approved Notice Was Sent To 4,476
Class Members And None Have Voiced Any Objection.........................................9

III.      ARGUMENT ...................................................................................9

     A.      The Court Should Certify The Settlement Class For Final Approval......................9

         1.      The Proposed Class Meets the Requirements of Rule 23(a) .........................10

             (a)      The Class is so Numerous that Joinder of All
Members is Impracticable ...............................................10

             (b)      There are Questions of Law or Fact Common to the Class...................11

             (c)      The Claims of the Proposed Class Representative
are Typical of Those of the Class .........................................11

             (d)      Douglas J. Coppess Has Fairly and Adequately ...................................12

         2.      The Class Satisfies the Criteria of Rule 23(b)(1) ......................................12

         3.      The Class Satisfies the Criteria of Rule 23(g).........................................14

B.    The Proposed Settlement Is Fair, Reasonable, And
Adequate To The Class ........................................................................15

    1.    The Law Favors and Encourages Settlements ..........................................15

    2.    The Sixth Circuit's Standards Governing Class Action Settlement...........17

        (a)    The Settlement Is the Result of Arms' Length
Negotiations Between Experienced Counsel ...................................18

        (b)    Continued Litigation Would Have Been Complex,
Expensive and Protracted, and May Not Have Resulted
in a Recovery Exceeding the Settlement Amount ...........................18

        (c)    Class Counsel Conducted a Thorough
Investigation and Was Well-Prepared for
Settlement Discussions...................................................................20

        (d)    Success for the Class after a Trial Was Uncertain ...........................21

        (e)    Experienced Class Counsel, Having Thoroughly ...........................23

        (f)    Absent Class Members Overwhelmingly
Support the Settlement ...................................................................23

        (g)    Settlement of the Case Serves the Public Interest
Because It Creates a Settlement Fund for the Class and
Avoids Protracted and Expensive Court Proceedings....................24

        (h)    The Settlement and Plan of Allocation have
been Reviewed by an Independent Fiduciary................................24

IV.    CONCLUSION....................................................................................24

## Table of Authorities

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................12

*Armstrong v. Board of Sch. Directors*,
  616 F.2d 305 (7th Cir. 1980) .....................................................16

*Banyai v. Mazur*,
  205 F.R.D. 160 (S.D.N.Y. 2002) ...............................................11

*Beach v. Healthways Inc., et al.*,
  Case No. 08-cv-00569 (M.D. Tenn., Campbell, J.) ....................5

*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) .....................................................11

*Bonime v. Doyle*,
  416 F. Supp. 1372 (S.D.N.Y. 1976) ......................................... 22

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ....................................................................16

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992)............................................17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ......................................................16

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................16

*Daffin v. Ford Motor Co.*,
  458 F.2d 549 (6th Cir. 2006) .....................................................11

*DiFelice v. US Airways, Inc.*,
  397 F. Supp. 2d 735 (E.D. Va. 2005)........................................21

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985) ....................................................22

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
  431 U.S. 395 (1977)...................................................................11

*Feret v. Corestates Fin. Corp.*,
  No. CIV. A. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998)................................14

*Godshall v. Franklin Mint Co.*,
  No. 01-CV-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004)....................................14

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993) ...................................................................16

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ...................................................................17

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .............................................................17

*In re Charter Commc'n Inc. Sec. Litig.*,
  MDL No. 1506, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) .................16

*In re CMS Energy ERISA Litig.*,
  225 F.R.D. 539 (D. Mich. 2004)........................................................10, 13, 14

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................10, 22, 24

*In re Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000).......................................................10, 13, 14

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998) ....................................................................10

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001)........................................................18, 23

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  718 F. Supp. 1099 (S.D.N.Y. 1989)..............................................................16

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003)...........................................................16

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ..................................................................14

*In re Warner Commc'n Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)...............................................................22

iv

*Int'l Union Workers of America v. Ford Motor Co.,*
   No. 07-CV-14845, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ............................................20, 23, 24

*Jones v. Nuclear Pharmacy, Inc.,*
   741 F.2d 322 (10th Cir. 1984) ................................................................................................................16

*Kenneth Banks v. Healthways Inc., et al.,*
   Case No. 08-cv-00734 (M.D. Tenn., Campbell, J.) ..................................................................................3

*Kuper v. Iovenko,*
   66 F.3d 1447 (6th Cir. 1995) ...................................................................................................................22

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.,*
   921 F.2d 1371 (8th Cir. 1990) .................................................................................................................16

*Minolta Camera Prods. Antitrust Litig.,*
   668 F. Supp 456 (D. Md. 1987) ...............................................................................................................17

*New England Health Care Emp. Pension Fund v. Fruit of the Loom, Inc.,*
   234 F.R.D. 627 (W.D. Ky. 2006)..............................................................................................................17

*Pa. Fed'n, Bdh. of Maint. of Way Employees v. Norfolk Southern Co.,*
   No. 02-CV-9049, 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004).....................................19

*Piazza v. Ebsco Indus., Inc.,*
   273 F.3d 1341 (11th Cir. 2001) ...............................................................................................................13

*Rankin v. Rots,*
   220 F.R.D. 511 (E.D. Mich. 2004) ..........................................................................................................14

*Reinhart v. Lucent Tech., Inc.,*
   307 F. Supp. 2d 633 (D.N.J. 2004) ..........................................................................................................10

*Senter v. General Motors Corp.,*
   532 F.2d 511 (6th Cir. 1976) .............................................................................................................11, 12

*Van Horn v. Trickey,*
   840 F.2d 604 (8th Cir. 1988) ...................................................................................................................16

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ......................................................................................................................16

*Weiner v. Klais & Co., Inc.,*
   108 F.3d 86 (6th Cir. 1997) .....................................................................................................................14

v

*White v. NFL*,
  836 F. Supp. 1458 (D. Minn. 1993) ....................................................................... 15

## **Other Material**

Advisory Comm. Notes to 1996 Amendment of Fed. R. Civ. P. 23(b)(1)(B) ................................ 4
ERISA § 409 .......................................................................................................... 3, 13
ERISA § 502(a)(2) ..................................................................................................... 3
Rule 23(a) ....................................................................................................... 10, 12, 13
Rule 23(a)(2) ........................................................................................................ 11, 12
Rule 23(a)(3) ........................................................................................................ 11, 12
Rule 23(a)(4) ............................................................................................................ 12
Rule 23(b) .............................................................................................................. 13
Rule 23(b)(1) ...................................................................................................... *passim*
Rule 23(b)(1)(A) .................................................................................................... 13, 14
Rule 23(b)(1)(B) .................................................................................................... 13, 14
Rule 23(b)(2) ............................................................................................................ 13
Rule 23(b)(3) ............................................................................................................ 13
Rule 23(g) .............................................................................................................. 14
29 U.S.C. § 1132 ........................................................................................................ 2
1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 3.01. at 3-4 (2004) ............... 10

Pursuant to Federal Rule of Civil Procedure 23(e) and this Court's December 1, 2010 Order Preliminarily Approving Settlement, Approving Form and Manner of Class Notice, and Scheduling Hearing on Fairness of Settlement ("Preliminary Approval Order"), Plaintiff Douglas J. Coppess ("Plaintiff"), by and through his undersigned attorneys ("Class Counsel"), respectfully submits this memorandum of law in support of his motion for final approval of a proposed settlement (the "Settlement") of this class action (the "Litigation") and plan of allocation of the proceeds of the Settlement ("Plan of Allocation"), and for certification of a settlement class (the "Class"). Plaintiff submits in further support of this motion the Declaration of Thomas J. McKenna in Support of Plaintiff's Motions for (1) Final Approval of Class Action Settlement and Certification of Settlement Class, and (2) for an Award of Attorneys' Fees, Reimbursement of Expenses and a Case Contribution Award for Plaintiff ("McKenna Decl." or "Declaration").

## I.       INTRODUCTION

It is respectfully submitted that this Court should certify the Settlement Class and approve the Settlement because it is fair, reasonable and adequate. This is a class action under the Employee Retirement Income Security Act ("ERISA") brought by Plaintiff on behalf of a class of current and former employees of Healthways, Inc. ("Healthways" or the "Company"), who were invested in the Healthways, Inc. Retirement Savings Plan (the "Plan"). The Parties have agreed to settle the case based on Defendants' payment of $1,250,000, to be distributed among Class Members pursuant to a Plan of Allocation. As set forth below and in the Declaration, the Settlement provides Class Members with a substantial benefit, without the risk or delay that would result from a trial and appeal.

This Litigation against Healthways and Plan fiduciaries Ben R. Leedle, Jr., Thomas G.

Cigarran, John A. Wickens, Henry D. Herr, Warren Neel, William C. O'Neil, Jr., Jay C. Bisgard, John W. Ballatine, Mary Jane England, Alison Tauton-Rigby, L. Ben Lytle, Mary A. Chaput, Alfred Lumsdaine, Betty Ann Lay, Amy Moore, Keith Braly, Glenn Hargreaves, Hans Bertil Westin, Clairbone Richards, and Jerry Armstrong ("Individual Defendants") was initially filed in this District on July 31, 2008. An oral agreement in principle to settle the case was reached in June 23, 2010. After engaging in well-informed, arms'-length negotiations, the Parties executed a Stipulation of Settlement that provides for the payment of $1,250,000 in cash to a settlement fund (the "Settlement Fund"). *See* Stipulation of Settlement dated July 30, 2010 ("Stip." or "Stipulation") [Doc. No. 32]. The Settlement Fund has been fully funded and is earning interest in an escrow account for the benefit of the Settlement Class.

This Settlement provides a substantial recovery for the Class of all current and former participants in the Plan for whose individual accounts the Plan held an interest in the common stock of Healthways at any time from May 16, 2005 to and including July 30, 2010. This is an excellent recovery in a complex case where recovery after trial was highly uncertain.

The Court should approve the Settlement and Plan of Allocation, and certify the proposed Class for settlement purposes.

## II. HISTORY AND BACKGROUND OF THE LITIGATION AND THE SETTLEMENT

The history of the Litigation is detailed in the Declaration to which Plaintiff respectfully refers the Court. *See* McKenna Decl. ¶¶ 5-14. The relevant facts may be summarized as follows:

### A. Factual Basis For Lawsuit

Plaintiff alleges a number of causes of action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against Defendants. Plaintiff alleges that Defendants were fiduciaries of the Plan

2

and that they breached their ERISA fiduciary duties by allowing the Plan to buy and hold Healthways stock when they knew or should have known that Healthways stock was an imprudent means of saving for retirement because Healthways was allegedly having undisclosed problems with its MHS Pilot Program for the Center for Medicare and Medicaid Services ("CMS") and in failing to take appropriate ameliorative action when such investments allegedly became imprudent. Plaintiff also alleges that Defendants breached their fiduciary duties under ERISA by failing to ensure that the Investment Committee (the "Committee") members had access to all relevant information regarding investment in Healthways stock as well as failing to monitor the Committee. The Complaint seeks equitable and compensatory relief pursuant to ERISA §§ 409 and 502(a)(2), specifically the restoration by Defendants to the Plan of losses allegedly caused by Defendants' alleged breaches of fiduciary duties. The Complaint also seeks costs and attorney's fees pursuant to ERISA § 502(g) and the common fund doctrine.

B.    **Progress Of The Litigation And Settlement Negotiations**

This Action is the second iteration of litigation against Healthways. Former plaintiff Kenneth Banks ("Banks") and Class Counsel, with the aid of a forensic accountant, investigated and filed a class action complaint on July 31, 2008 against Healthways and certain of its directors and officers alleging breaches of fiduciary duties to participants in the Plan. *Kenneth Banks v. Healthways Inc., et al.,* Case No. 08-cv-00734 (M.D. Tenn., Campbell, J.) (hereinafter the "*Banks Litigation*"). Banks filed an Amended Complaint on September 29, 2008. (Banks Doc. 17). Defendants moved to dismiss the Amended Complaint on October 29, 2008 for failure to state a claim (Banks Doc. 22). Plaintiff filed papers in opposition to the motion on December 5, 2008 (Banks Doc. 31). Defendants filed reply papers in support of the motion on December 19, 2008 (Banks Doc. No. 32). Thereafter, on January 23, 2009, this Court held oral argument

3

on the motion to dismiss.

After briefly taking the motion under advisement, this Court partially granted and partially denied Defendants' Motion to Dismiss on January 28, 2009 (Banks Doc. 37). Defendants filed an Answer (Banks Doc. 40) and discovery commenced. Plaintiff Banks produced to Defendants copies of his own Healthways related documents and answered and verified interrogatories. After written discovery requests were propounded, Defendants began a voluminous document production to Plaintiff of ERISA-related documents and documents concerning the underlying MHS Pilot program.

Plaintiff then conducted a Rule 30(b)(6) deposition of a representative of Healthways on May 8, 2009. Plaintiff then filed, on May 12, 2009, a motion to be certified as a class action (Banks Doc. 43, 44 and 45). While class certification discovery was on-going, Plaintiff Banks had personal issues which prevented his appearance at his noticed deposition. Therefore, on August 6, 2009, the *Banks Litigation* was dismissed with prejudice on behalf of Banks for his failure to appear, but without prejudice on behalf of the putative class (Banks Doc. 53, 54).

Save for the change in the named plaintiff, the Coppess Complaint in this Action is identical to the *Banks Litigation* amended complaint, including all allegations and requests for relief (*cf.* Doc. 1 with Banks Doc. 17).

Further, on March 11, 2010, the Court entered by Consent Order in this Action granting in part and denying in part the Defendants' Motion to Dismiss previously entered in the *Banks Litigation* (Banks Doc. 37) (Doc. 15) so that this case resumed where the *Banks Litigation* left off. Defendants filed their Answer to the Coppess Complaint on March 22, 2010 (Doc. 20). Thereafter, discovery re-commenced.

The Parties in this action also coordinated the taking of depositions with the related

4

securities fraud action, *Beach v. Healthways Inc., et al.*, Case No. 08-cv-00569 (M.D. Tenn., Campbell, J.) that also was concerned with the MHS Pilot Program. Four (4) depositions of defense representatives were taken as to the underlying facts surrounding the MHS Pilot Program. Plaintiff moved for Class Certification and in connection therewith, Plaintiff Coppess produced copies of his documents, answered and verified interrogatories and was deposed by Defendants.

The Parties, by and through their respective counsel, discussed a possible settlement. Defendants provided to Plaintiff detailed trading records from the Plan. Plaintiff retained a damages expert and provided these trading records to the expert. Defendants, of course, denied that they had breached their fiduciary duties in any way to the proposed class and asserted that there was no liability. Defendants also argued that even assuming liability could be established, the only damages Plaintiff could hope to recover would be on purchases by the Plan of Company stock during the Class Period when the stock was allegedly being purchased by the Plan at inflated prices. According to the Defendants, the damages suffered by the Plan (assuming liability was established) were only approximately $300,000 or less.

Plaintiff, with the help of his expert, contended, however, that if Company stock was imprudent, then both those Plan members who held the Company stock and those who purchased it during the time it was imprudent were harmed. Plaintiff's expert performed a damage analysis that assumed that if Healthways stock was not a prudent investment option as of the start of the proposed Class Period, participants in the Plan would have contributed to the other investment alternatives in the same proportion as participants had in the past. Therefore, Plaintiff's expert compared the relative value of each investment alternative to the total value of the Plan and reallocated the investment in Healthways stock accordingly. For example, if 20% of the total

Plan's assets (excluding Healthways stock) were invested in a particular mutual fund, the expert assumed that had Healthways stock not been an investment option, 20% of the assets that were invested in Healthways stock would have been invested in that mutual fund.

Once the relative weights in each of the investment alternatives were determined, the expert calculated the daily returns for the Hypothetical Basket of funds by weighting the actual daily returns for each fund by the fund's relative weight determined in the previous step. Then, using the daily returns for the Hypothetical Basket of funds, the expert calculated the value of the Hypothetical Basket on each day of the Class Period. In addition to losses suffered by Plan participants on the initial balances invested in Healthways stock, the expert also accounted for losses on contributions in Healthways stock during the Class Period. As contributions were made in Healthways stock, Plaintiffs' expert assumed that the same dollar value was contributed in the Hypothetical Basket of Funds. Similarly, when distributions were made out of Healthways stock, Plaintiff's expert assumed that the same dollar value was distributed out of the Hypothetical Basket of Funds.

The damages on each day of the Class Period were determined by comparing the value of the Hypothetical Basket of funds with the value of the actual investment in Healthways stock. Using this methodology, the Plaintiff's expert calculated that the Plan had suffered approximately $5.8 million in losses.

The Settlement was negotiated in good faith by counsel for the parties and at arms' length. The Parties contend that the terms of the Settlement, which obligates Defendants to pay $1.25 million, was worthy of consideration by all of the members of the Class. The Notice approved by the Court was disseminated to the Class and to date there have been no objections to the settlement.

It is difficult to compare the Settlement to the amount that the Class might have obtained if it had been completely successful in establishing liability at trial, because the parties hotly debated the merits of the alleged breaches of fiduciary duty at issue, as well as the proper methodologies for computing damages. However, the Settlement represents approximately 22% percent of Plaintiff's "best case" damages scenario of approximately $5.8 million (assuming that the Healthways Stock Fund was liquidated without disclosure on the first day of the Class Period and invested in the best performing Plan asset during the Class Period), and other damages scenarios would result in a sharply reduced recovery. The Settlement amount substantially exceeds Defendants' hypothetical damages calculation (a finding of $300,000 or less).

On June 23, 2010, the Parties, by and through their respective counsel, reached an oral agreement in principle to the terms of the proposed Settlement. Based on an in-depth analysis, informed by legal and factual research, of the likelihood of establishing liability and recovering damages at trial, Plaintiff and Class Counsel concluded that entering into the Settlement best served the interests of the Settlement Class.

### C. The Parties Draft A Stipulation Of Settlement

The parties signed a Stipulation of Settlement on July 30, 2010. Under the terms of the Settlement, Defendants have paid $1,2500,000 into a Settlement Fund, to be distributed based on a Plan of Allocation among the following class:

> All persons within the class defined above who held such stock in their Plan accounts at any time during the period of May 16, 2005 through July 30, 2010, (the "Class Period") excluding any and all Defendants, Banks and any legal representatives, heirs, predecessors, and assigns of Defendants and/or Banks.

### D. The Plan Of Allocation

Under the proposed Plan of Allocation, a Class Member's share of the Settlement Fund will depend on the investment in Healthways stock in his or her Plan account during the Class

Period. Each Class Member's share of the Net Settlement Fund will be determined according to the following formula:

### 1. A Class Member's Net Loss is Calculated

A Class Member's Net Loss, for the purpose of the allocation methodology, is the total of the dollar value of his or her holdings in the Healthways Stock Fund ("Healthways Fund") at the beginning of the Class Period (May 16, 2005) plus (+) the dollar value of units purchased on his or her behalf in the Healthways Fund during the Class Period minus (-) the dollar value of units he or she sold or withdrew from the Healthways Fund during the Class Period minus (-) the dollar value of his or her holdings in the Healthways Fund at the end of the Class Period (July 30, 2010).

### 2. A Class Member's Net Loss Percentage is Calculated

A Class Member's Net Loss Percentage will be determined by dividing his or her Net Loss by the total Net Loss of all Settlement Class Members.

### 3. A Class Member's Share of the Net Settlement Amount is Calculated

A Class Member's Net Loss percentage will determine the dollar value of his or her share, if any, of the Net Settlement Amount. A Class Member's share will be his or her Net Loss Percentage multiplied by the Net Settlement Amount. But, no Settlement Class Member who is entitled to a share or allocation of the Net Settlement Amount will receive less than $50.

The Plan of Allocation was explained in detail in the Notice that was sent to Class Members. No Class Member has objected to the Plan of Allocation.

### E. The Settlement Has Been Evaluated By An Independent Fiduciary

Since this case settles ERISA claims on behalf of the Plan, the settlement is subject to review by an independent fiduciary retained by the Plan. The Plan retained Evercore Trust

Company, N.A. ("Evercore") to serve as its independent fiduciary. The Parties and Evercore have discussed every aspect of the Settlement. Evercore has fully evaluated the terms of the Settlement and concluded that they do not anticipate having any objections to it. Evercore will issue a written report before the Fairness Hearing.

### F. The Court-Approved Notice Was Sent To 4,476 Class Members And None Have Voiced Any Objection

Pursuant to the Preliminary Approval Order, the Court-approved Notice of Class Action Settlement ("Notice") was sent to 4,476 current and former Healthways employees believed to be Class Members. *See* Affidavit of Michelle LaCount ¶ 10 ("LaCount Decl."). The Preliminary Approval Order and the Notice sent to Class Members set April 8, 2011 as the date by which Class Members could object to the Settlement.

No objections have been received by Class Counsel to date. If any objections are received after the filing of this motion, Class Counsel will address any such objections in a supplemental filing.

## III. ARGUMENT

### A. The Court Should Certify The Settlement Class For Final Approval

Plaintiff, pursuant to the Settlement Agreement, seeks certification under Fed. R. Civ. P. 23(b)(1) of the following non-opt-out class for settlement purposes only:

> All persons within the class defined above who held such stock in their Plan accounts at any time during the period of May 16, 2005 through July 30, 2010, (the "Class Period") excluding any and all Defendants, Banks and any legal representatives, heirs, predecessors, and assigns of Defendants and/or Banks.

Additionally, the Parties ask that Douglas J. Coppess be named Class Representative for settlement purposes only, and that Gainey & McKenna be designated as Class Counsel.

This case meets every requirement for certification under Fed. R. Civ. P. 23(b)(1).

9

Courts routinely certify ERISA class actions, as demonstrated by rulings in numerous federal courts. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 308 (3d Cir. 1998), *aff'd in part*, *rev'd in part on other grounds*, 278 F.3d 175 (3d. Cir. 2002) (certifying class for settlement purposes in ERISA class action); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000) (certification granted after hearing); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545-46 (D. Mich. 2004); *Reinhart v. Lucent Tech., Inc.*, 307 F. Supp. 2d 633 (D.N.J. 2004); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004). Certification is appropriate in this case as well.

### 1. The Proposed Class Meets the Requirements of Rule 23(a)

Rule 23(a) provides four prerequisites for certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The first two of these requirements are intended to identify so-called "natural" class actions – those in which joinder of all interested parties is impracticable and those presenting at least one common issue of fact or law. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 3.01. at 3-4 (2004). The third and fourth requirements define the desired attributes of the class representative. *Id.*

### (a) The Class is so Numerous that Joinder of All Members is Impracticable

Defense counsel supplied the Notice Administrator with the names and addresses of 4,476 current and former Healthways employees believed to be Class Members. While there is no strict numerical test, "substantial numbers" usually satisfy the numerosity requirement.

10

*Daffin v. Ford Motor Co.*, 458 F.2d 549, 552 (6th Cir. 2006); *see also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (deeming "frivolous" an objection on numerosity grounds to a 1,000 member class). There can be no doubt that a class comprised of over 4,476 Members is sufficiently numerous to support class treatment.

### (b) There are Questions of Law or Fact Common to the Class

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

The Complaint alleges that common issues of law and fact include:

- Whether Defendants were ERISA fiduciaries;

- Whether Defendants breached their fiduciary duties;

- Whether, as a result of fiduciary breaches engaged in by the Defendants, the Plan and its participants and beneficiaries suffered losses; and

- Whether the Class is entitled to damages and injunctive relief.

Because common issues of law and fact are presented, Rule 23(a)(2) is satisfied.

### (c) The Claims of the Proposed Class Representative are Typical of Those of the Class

Rule 23(a)(3) requires that proposed class representatives present claims typical of other class members – in other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To be typical a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law. *Senter v. General Motors Corp.*, 532 F.2d 511, n.31 (6th Cir. 1976).

In this action, Plaintiff seeks to recover for losses for himself and his fellow Class Members, which were sustained as a result of Defendants' alleged breaches of fiduciary duty. Plaintiff's individual claim relies upon the same legal theories as the claims of his fellow Class Members. Therefore, he satisfies the typicality requirement.

        **(d)        Douglas J. Coppess Has Fairly and Adequately Protected the Interests of the Class**

"The adequacy of representation requirement is met when 'the representative parties will fairly and adequately protect the interests of the class.'" Fed. R. Civ. P. 23(a)(4). The Sixth Circuit recognizes two criteria for determining whether the class representative will adequately protect the class's interests: (1) whether the representative has common interests with unnamed class members, and (2) whether the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 524-25. To a large extent, the adequacy requirement merges with the commonality and typicality criteria of Rule 23(a)(2) and (a)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997).

Plaintiff is a former Healthways employee who allegedly lost money in his retirement account as a result of imprudent class period investments in Healthways stock. As such, he is in exactly the same position as other Class Members. Plaintiff has provided the Court with a declaration describing his efforts on behalf of the Class during this litigation. *See* McKenna Decl. Ex. D. Plaintiff's declaration demonstrates that he has done everything that could be expected of a Class Representative in this case. There is no evidence that he has any interests that are antagonistic to the Class. To the contrary, all the evidence establishes his unity of interest with absent Class Members.

        **2.       The Class Satisfies the Criteria of Rule 23(b)(1)**

Because Plaintiff has satisfied the requirements of Rule 23(a), this Court should certify

12

the Class if it satisfies one or more of Rule 23(b)'s three subsections.  As often has been noted, the additional requirements of Rule 23(b) overlap considerably with those of Rule 23(a), and with each other.  *Newberg on Class Actions* § 4.01 (2004).

This Class is appropriate for certification as a non opt-out class under Rule 23(b)(1).  In fact, given the unique representative nature of a breach of fiduciary duty action under ERISA, some courts have held that an ERISA breach of fiduciary action may be certified only as a non opt-out class under (b)(1) or (b)(2).  *See, e.g., Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1352-53 (11th Cir. 2001) (rejecting certification of a claim alleging breach of fiduciary duty brought under ERISA § 409 on behalf of the plan under Rule 23(b)(3), and remanding for findings consistent with its ruling that such actions should be maintained under Rule 23(b)(1) or (b)(2)).

Under Rule 23(b)(1), a class may be certified if:

> (1)     prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Ikon*, 191 F.R.D. at 466.

A Michigan district court approving a Rule 23(b)(1) class in a similar ERISA class action held in relevant part:

> The court agrees with plaintiffs that the claims in this litigation, alleging defendants' breaches of fiduciary and co-fiduciary duties through their 1) failure to prudently manage Plan assets, 2) failure to provide complete and accurate information to participants and

> beneficiaries, and 3) failure to monitor Plan fiduciaries, are brought by definition in a representative capacity, as damages awarded would inure to the plan as a whole. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 91-92 (6th Cir. 1997). This fact demonstrates that plaintiffs' claims "as a practical matter" would "be dispositive of the interests of the other members not parties to the adjudication." Fed. R. Civ. P. 23(b)(1)(B).
>
> \*     \*     \*
>
> Here, as in the Ikon case, failure to certify could risk inconsistent rulings concerning fiduciary status of the defendants and materiality of alleged omissions. *Ikon*, 191 F.R.D. at 466. The court's ruling, therefore, is to grant plaintiff's requested class certification, under both 23(b)(1)(A) and (b)(1)(B).

*In re CMS Energy ERISA Litig.*, 225 F.R.D. at 545-46; *see also Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004); *Ikon*, 191 F.R.D. 457; *Feret v. Corestates Fin. Corp.*, No. CIV. A. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004). *See also Advisory Comm. Notes to 1996 Amendment of Fed. R. Civ. P. 23(b)(1)(B)* (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

Likewise, certification of a non-opt-out class under Rule 23(b)(1) is appropriate here.

### 3.     The Class Satisfies the Criteria of Rule 23(g)

In addition to the other requirements outlined above, Rule 23 requires the Court to examine the capabilities and resources of Class Counsel to determine whether they will provide adequate representation to the Class. Class Counsel easily meet the dictates of Rule 23(g).

The Settlement was achieved by attorneys with years of experience in ERISA law and in prosecuting and trying complex actions. *See* McKenna Decl. Ex. A and Bramlett Decl. Ex. C. Class Counsel's experience and skill were demonstrated by the effective prosecution of this action, including the substantial settlement achieved. The result achieved is the clearest reflection of Class Counsel's skill and expertise. *See In re Warfarin Sodium Antitrust Litig.*, 212

F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"); *see also In re Ikon Office Sol. Inc. Sec. Litig.*, 194 F.R.D. 161, 194 (E.D. Pa. 2000) ("the most significant factor in this case is the quality of representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel'"). Class Counsel's extensive experience and the substantial results achieved satisfy Rule 23(g).

This case satisfies all of the prerequisites for class certification under Rule 23. Therefore, for purposes of effectuating this Settlement, this action should be certified under Fed. R. Civ. P. 23(b)(1) as a non-opt-out class action.

**B.    The Proposed Settlement Is Fair, Reasonable, And Adequate To The Class**

**1.    The Law Favors and Encourages Settlements**

Because this action is a class action, the settlement must be submitted to the Court for approval under Fed. R. Civ. P. 23, which provides in pertinent part:

> (e)    Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1)    The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2)    If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3)    The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

Federal courts strongly favor the voluntary resolution of complex class actions. *White v.*

*NFL*, 836 F. Supp. 1458, 1476 (D. Minn. 1993) (citing *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (compromise is particularly appropriate in complex class actions).  In class actions in particular, "there is an overriding public interest in favor of settlement."  *In re Charter Commc'n Inc. Sec. Litig.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *15 (E.D. Mo. June 30, 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1391 (8th Cir. 1990) (holding that the policy favoring settlement is so strong that such settlement agreements are "presumptively valid").  Furthermore, "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel."  *Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772, at *19 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

The Court has wide discretion in determining whether to approve a class action settlement, however the Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).  *Accord In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003).  Because the object of the settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits.  *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) ("the court need not undertake the type of detailed investigation that trying the case would involve").  Instead, the Court's inquiry should be limited to the consideration of whether the proposed settlement is "fair, reasonable and adequate."  *Gottlieb v. Wiles*, 11 F.3d 1004, 1014

(10th Cir. 1993) (citing *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). Rather, when experienced counsel have negotiated and presented a settlement that has been negotiated at arm's-length in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. *Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp 456, 460 (D. Md. 1987); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

Moreover, preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. *New England Health Care Emp. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006).

**2.     The Sixth Circuit's Standards Governing Class Action Settlement**

Courts in the Sixth Circuit have identified the following factors that should guide the district court's inquiry on a motion to approve a class action settlement: (1) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; (2) the complexity, expense and duration of further litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (5) the judgment of experienced counsel who have competently evaluated the strengths of their proof; (6) the reaction of absent class members; and (7) whether the settlement is consistent with the public interest. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). The district court has wide discretion in assessing the weight and applicability of these factors. *Granada Invs., Inc. v. DWG Corp.*, 962

F.2d 1203, 1205-06 (6th Cir. 1992).  Each of these factors supports court approval of the settlement in this Action.

**(a)    The Settlement Is the Result of Arms'
        Length Negotiations Between Experienced Counsel**

This settlement should be approved because it is the product of arms' length negotiations between experienced counsel.  Before entering into the Settlement, Class Counsel had conducted a thorough investigation, filed a detailed Class Action Complaint, retained a forensic accountant to assist in understanding the financial and accounting issues in the case, defeated a motion to dismiss, retained a damages expert to calculate class-wide damages, engaged in document discovery and depositions, moved for class certification and engaged in protracted, arms' length settlement discussions.  The Settlement reached provides a substantial benefit to the Class. There is no evidence supporting a finding of collusion between the opposing sides in this lawsuit. *See In re Telectronics Pacing Sys.*, Inc. 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered").

**(b)    Continued Litigation Would Have Been Complex,
        Expensive and Protracted, and May Not Have
        Resulted in a Recovery Exceeding the Settlement Amount**

Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.  *Telectronics*, 137 F. Supp. 2d at 1013.  Had this class action case not settled, the proceedings would have been protracted, expensive and highly complex.  This factor heavily favors settlement approval.

ERISA claims for breach of fiduciary duty have four major components, requiring different types of proof.  A Plaintiff must prove (i) that each defendant is a fiduciary; (ii) that each fiduciary defendant breached a duty; (iii) that the breaches caused damage; and (iv) the

18

amount of damages which are attributable to the fiduciary breaches. Each of these matters would have been difficult to prove in this case. Though Plaintiff believes the Class could have succeeded, organizing the proof, deposing all the hands-on fiduciaries and various professional employees performing work for the Plan, as well as retaining experts on fiduciary practice, accounting, ERISA, and damages would have been both difficult and expensive.

Further, Plaintiff would have to establish at trial that Healthways stock was artificially inflated, in a context in which no criminal or civil charges were ever filed by the SEC. Certainly, a plan investment offering can become imprudent for a variety of reasons other than securities fraud. *See, e.g.*, *Pa. Fed'n, Bdh. of Maint. of Way Employees v. Norfolk Southern Co.*, No. 02-CV-9049, 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) (same). Establishing both imprudence and the failure of the fiduciaries to respond appropriately would be extremely complicated and also costly. Payment of these expenses, as well as compensation for attorney time expended on these issues of proof, ultimately would reduce any judgment.

The legal and factual complexities of this case would make it expensive to litigate, and if fully litigated, it could take years to resolve through trial and possible appeals. Given the unsettled state of the law, Defendants would have every incentive to appeal an adverse result. The Settlement, which was negotiated by experienced counsel at arms-length, presents the opportunity for a guaranteed benefit to the Class with relatively limited costs and fees incurred. Settling the case now, before many more dollars are spent on costs and fees by both sides, will result in an enormous savings of time and money to the parties, the Class, and the Court. *See, e.g.*, *Ikon*, 194 F.R.D. at 194-95 (finding that the complexity and duration of litigation of similar breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement). The second factor to consider in

respect to this settlement – complexity, expense, and the probable duration of litigation – therefore strongly militates in favor of approval.

(c) <b>Class Counsel Conducted a Thorough Investigation<br>and Was Well-Prepared for Settlement Discussions</b>

Prior to discussing settlement, Class Counsel conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Complaint, and the operations and administration of the Plan. This investigation included, among other acts, conducting individual interviews with Plan participants, researching Healthways SEC filings with the aid of a forensic accountant, reviewing documents pertaining to the Plan, its operation, and underlying events, and analyzing potential damages. Once the motion to dismiss was defeated, discovery commenced, voluminous documents were produced by Defendants, five depositions of defense witnesses were taken and the Plaintiff was deposed. A motion for class certification was made and was pending when the settlement discussions began. Before Plaintiff would proceed with substantive settlement discussions, Plaintiff insisted on receiving, and did receive, detailed Plan data pertaining to the transactions within the Plan accounts in Healthways company stock. This detailed Plan data was then given to plaintiff's testifying damages expert to review, analyze and calculate damages under various factual assumptions as to liability. As a result of this investigation and discovery, and informal discussions with defense counsel, Class Counsel was able to evaluate the strengths and weaknesses of the case, and participate intelligently in settlement discussions.

In evaluating the fairness of a settlement, the fact that formal discovery is not concluded is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties. *See Int'l Union Workers of America v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). In

this case, Class Counsel's investigation and discovery efforts, together with Plaintiff's expert's analysis of damages, enabled Class Counsel to gauge the value of the case for settlement purposes.

### (d)     Success for the Class after a Trial Was Uncertain

*Proving Liability Would Have Been Difficult*.  Plaintiff would have faced numerous hurdles in establishing Defendants' liability and proving the existence and extent of any damages to the Plan and the Class.  To prevail on their ERISA claims, the Class must show that each defendant failed to comply with his or her duties under ERISA, a daunting undertaking considering the uncertainty in this evolving area of the law.  Defendants would likely present a number of defenses that have been upheld by courts as preventing ERISA recovery on behalf of a plan's participants.  These include: (1) that, as a matter of law, Heallthways stock was not an "imprudent" plan investment; (2) that Defendants did not function as ERISA fiduciaries with regard to Plan investments in Healthways stock; (3) that Plaintiff failed to plead or prove that Healthways and the Individual Defendants breached their fiduciary duty to monitor their alleged appointees; (4) that Plaintiff failed to prove that Defendants breached their fiduciary duty to disclose complete and accurate information to Plan participants (to the extent that such a duty exists) as to the underlying facts concerning the MHS Pilot Program; and/or (5) that Plaintiff failed to properly state a claim for co-fiduciary liability.  On the issue of imprudency, some courts have held that a company's ERISA plan may continue investing in the company's own stock as long as the company is not facing bankruptcy or imminent collapse.  *See, e.g.*, *DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 735 (E.D. Va. 2005).  While Plaintiff contends this is not the appropriate standard, Plaintiff recognizes that some courts have used this standard.  Here, Healthways's financial condition was not so dire as to satisfy this standard.  Even if the Court

declined to adopt the "imminent collapse" line of cases, at summary judgment and trial, Plaintiff may have faced a presumption under Sixth Circuit law that Defendants' decision to invest the Plan in Healthways securities was reasonable. *See Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995). If this presumption was applied, its rebuttal would have presented a significant burden to Plaintiff.

*Establishing Damages Would Have Been Difficult*. The calculation of ERISA damages is "complex, time-consuming and expensive." *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004). Had this case not settled, calculation of damages would have to be made through a full discovery process and adjudication. The trier of fact would have been required to determine the time period (if any) during which investment in Healthways stock was "imprudent" for the plan. *See Donovan v. Bierwirth*, 754 F.2d 1049, 1057 (2d Cir. 1985). Damages calculations in ERISA cases like this are, in practice, computer-and expert-intensive. The proof invariably requires a sophisticated computer model of the plan involved, usually tracking the assets held by the plan and its participants, purchases and sales of the individual accounts of participants, as well as any other relevant assets held, purchased and/or sold by the plan but not allocated to its participants. These calculations must be repeatedly performed to calculate damages suffered by each participant's account as well as the plan as a whole. An expert must create the model, test it, and effectively explain it. This sort of complexity, or the possibilities of glitches in the model, can have unexpected results. Defendants, of course, would have their expert with competing views on damages (or the total lack thereof). Thus, this type of complexity favors early resolution. *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977) (difficulty in determining damages a factor supporting

22

settlement). This factor, like the others, plainly militates in favor of settlement.

### (e) Experienced Class Counsel, Having Thoroughly Evaluated the Case, Support the Settlement

Where counsel are reputable practitioners and experienced in complex class action litigation, their collective judgment in favor of settlement is entitled to considerable weight. *Int'l Union Workers*, 2008 WL 4104329, at *26. Class Counsel bring to this case many years of experience in handling complex class action cases, including ERISA cases. Class Counsel have served in this case since it was initially filed in 2008. They conducted the investigation, retained and consulted with the forensic accountant and the damages experts, litigated the case, defeated the motion to dismiss, conducted discovery, moved for class certification and participated in the arms-length settlement negotiations with opposing counsel during which the strengths and weaknesses of the case were fully vetted.

Class Counsel and Plaintiff Douglas J. Coppess fully support the Settlement reached in this case. Their factor supports Settlement approval.

### (f) Absent Class Members Overwhelmingly Support the Settlement

As required under the Preliminary Approval Order, Plaintiff caused the Court-approved Notice of Class Action Settlement to be mailed to approximately 4,476 Class Members, and posted the Notice on the Notice Administrator's website. In addition, 1,768 Class Members also received the Notice via email. LaCount Aff. at ¶¶ 10, 13.

There have been no objections to date by any Class Members to the Settlement. *See, e.g.*, *Telectronics*, 137 F. Supp. 2d at 1018 ("Generally a diminutive amount of objectors may signify that a settlement is fair"). If any objections are received after the filing of the instant motion, they will be addressed by Class Counsel in a supplemental submission.

**(g)    Settlement of the Case Serves the Public Interest Because It Creates a Settlement Fund for the Class and Avoids Protracted and Expensive Court Proceedings**

A settlement in this complex class action serves the public interest by conserving the resources of the parties and the Court, and by promoting the "strong public interest in encouraging settlement of complex litigation and class action suits." *See Int'l Union Workers*, 2008 WL 4104329, at *28. The settlement will avoid protracted proceedings, and obtain a substantial recovery for a large Class of current and former Healthways employees. The public interest is well served by the $1,250,000 settlement reached in this case.

**(h)    The Settlement and Plan of Allocation have been Reviewed by an Independent Fiduciary**

Another factor favoring approval of the Settlement is the fact that a qualified and independent fiduciary, retained by the Plan, has studied the Settlement's terms and has indicated that it does not anticipate having any objections to it and will issue a written report. Courts evaluating settlements of similar claims have cited with approval independent fiduciary review of a settlement's terms. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 (noting that such review helps to drastically reduce "the likelihood of a collusive settlement between defendants and plaintiffs' lawyers at the expense of the plaintiff class[]").

## IV.    CONCLUSION

In sum, the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in this District. Further, certification of a non-opt-out settlement class is appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Notice plan more than meets the requirements of due process.

Each term and detail of the Settlement was the product of spirited and extensive arms'

length negotiations between experienced counsel informed as to the strengths and weaknesses of their liability and damages cases. Additionally, the Settlement was thoroughly vetted by an independent fiduciary, which has indicated that it does not anticipate having any objections. Moreover, the approved Class Notice process undoubtedly satisfies the requirements of due process – the individual and web based forms of notice used are consistent with the forms of notice utilized in analogous actions.

The Settlement provides substantial benefits to the Class of Plan participants now as opposed to years in the future (or never) and fully, fairly, and favorably resolves Plaintiff's claims. This conclusion is supported by the fact that as of this filing no Class Members have objected to the Settlement terms.

For these and the other foregoing reasons detailed above, Plaintiff respectfully requests that the Court certify the Class for Settlement purposes, appoint Douglas J. Coppess as its representative, and approve the Settlement in all respects on a final basis.

Dated: April 1, 2011

Respectfully submitted,

By: */s/ Thomas J. McKenna*
**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Ave., 4th Floor
New York, NY 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gaineyandmckenna.com
Email: tjmlaw2001@yahoo.com

*Class Counsel for Plaintiff and the Class*

By: _s/Paul Kent Bramlett_
**BRAMLETT LAW OFFICES**
Paul Kent Bramlett
Robert Preston Bramlett
2400 Crestmoor Road
P.O. Box 150734
Nashville, TN 37215
Email: pknashlaw@aol.com
Email: robert@bramlettlawoffices.com

_**Attorneys for Plaintiff and the Class**_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing *Plaintiff's Memorandum of Law in Support of His Motion to Certify Class for Settlement Purposes and For Final Approval of Class Action Settlement and Incorporated Memorandum of Law* has been served upon opposing counsel, via the Court's CM/ECF e-mail notification system, on this the 1st day of April, 2011:

**ALSTON + BIRD LLP**
H. Douglas Hinson, Esq.
1201 W Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Fax: (404) 881-7777
doug.hinson@alston.com

**BASS, BERRY & SIMS, PLC**
Wallace W. Dietz, Esq.
Brian D. Roark, Esq.
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Phone: (615) 742-6200
broark@bassberry.com
wdietz@bassberry.com

*Attorneys for Defendants*

SO CERTIFIED this 1st day of April, 2011.


*s/Paul Kent Bramlett*
Paul Kent Bramlett